[No. C062967. Third Dist. June 22, 2010.]

In re MANUEL JOSE MAES, JR., on Habeas Corpus.

Counsel

Michael Satris, under appointment by the Court of Appeal, for Petitioner Manuel Jose Maes, Jr.

Edmund G. Brown, Jr., Attorney General, Julie L. Garland, Assistant Attorney General, Jennifer A. Neill and Christopher J. Rench, Deputy Attorneys General, for Respondent State of California.

## Opinion

**CANTIL-SAKAUYE, J.**—Penal Code section 2933[1] allows state prisoners who participate in qualifying work, training, and educational programs the privilege of earning postsentence conduct credit against their sentences. (*Id.,* subd. (a) [the statute refers to this credit as "worktime credit"].) Section 2933.05 authorizes postsentence credit for a prisoner's successful completion of specific program performance objectives in approved rehabilitative programming. (*Id.,* subd. (a).) However, section 2933.2, subdivision (a) provides that "any person who is convicted of murder . . . shall not accrue any credit, as specified in Section 2933 or Section 2933.05." (§ 2933.2, subd. (a); hereafter section 2933.2(a).) Section 2933.2, subdivision (b) further specifies that this prohibition applies "whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 or sentenced under some other law." (§ 2933.2, subd. (b); hereafter section 2933.2(b).)

In this matter we consider whether a state prisoner convicted of murder and sentenced to an indeterminate life term is entitled to earn postsentence conduct credit against a consecutive determinate term imposed for a separate offense, which section 669 directs to be served first. We conclude section 2933.2 bars such credit.[2]

## PROCEDURAL BACKGROUND

In 2004, petitioner Manuel Jose Maes, Jr., was convicted of second degree murder (§ 187) with a true finding that he used a deadly weapon, a baseball

---

[1] Hereafter, undesignated statutory references are to the Penal Code.

[2] Effective on January 25, 2010, section 2933.2(a) bars the accrual of credit under either section 2933 or section 2933.05. (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 40.) Section 2933.05 also became effective January 25, 2010. (Stats. 2009, 3d Ex. Sess. 2009–2010, ch. 28, § 39.) The parties address only the bar by section 2933.2(a) of section 2933 conduct credits. However, resolution of the issue presented does not turn on the statute that authorizes the credit. If petitioner is not entitled under the language of section 2933.2(a) to accrue conduct credit under section 2933 on the consecutive determinate term imposed for his separate offense, then neither is he entitled to any rehabilitative program credit under section 2933.05.

bat, in the commission of the offense. (§ 12022, subd. (b)(1).)[3] The trial court sentenced petitioner to an indeterminate term of 15 years to life, plus one year for the deadly weapon enhancement. Petitioner's probation on a 2002 spousal abuse conviction (§ 273.5) was revoked[4] and terminated; the trial court sentenced petitioner to serve the upper term of four years for that conviction. The sentences were ordered to be served consecutively.[5]

California's Department of Corrections and Rehabilitation (CDCR) determined petitioner was ineligible to earn postsentence conduct credit under section 2933.2 on any portions of his sentence. Contending he was entitled to earn such credits on the determinate portions of his sentence, petitioner appealed the CDCR's conclusion. When the CDCR denied his appeal, petitioner filed a petition for writ of habeas corpus with the superior court. The superior court issued an order to show cause, but denied the petition after hearing.

Petitioner then filed an original petition for habeas corpus in this court. We issued an order to show cause limited to "petitioner's claim that he is entitled to conduct credits during service of his term for conviction of violation of Penal Code Section 273.5." Having now considered the issue, we shall deny the petition.

## DISCUSSION

### I.

### General Statutory Background

Before we consider the precise issue before us, it is helpful to set the stage with a review of a few general principles regarding sentencing in California.[6]

---

[3] Petitioner committed the murder in 2003. Section 2933.2 applies to murder, like petitioner's, that is committed on or after June 3, 1998. (§ 2933.2, subd. (d).)

[4] Petitioner pled nolo contendere to a felony violation of section 273.5 in 2002. Imposition of judgment and sentence was suspended and petitioner was placed on five years of formal probation.

[5] The trial court did not expressly state that the sentences were consecutive. However, the court stated at the outset of sentencing that it was "inclined" to follow the probation report and impose consecutive rather than concurrent sentencing. Then, after imposing the life sentence for murder, the one-year deadly weapon enhancement, and the four-year term for spousal abuse, the court stated "the aggregate prison term under the determinate sentencing law is five years, under the indeterminate sentencing law, that is the minimum to life is fifteen years which would equate to a twenty year to life sentence." These comments indicate the sentences were ordered to be served consecutively and petitioner so admits.

[6] As it is inapplicable here, we make no effort to summarize the "Three Strikes" law of California. (See §§ 667, 1170.12.)

Two different criminal offender sentencing schemes coexist in California: one determinate (a sentence for a specific number of years) and the other indeterminate (a sentence for some number of years to life or simply "life"). (*People v. Felix* (2000) 22 Cal.4th 651, 654 [94 Cal.Rptr.2d 54, 995 P.2d 186] (*Felix*).) " 'Every person who commits a public offense, for which any specification of three time periods of imprisonment in any state prison is now prescribed by law or for which only a single term of imprisonment in state prison is specified,' *i.e.*, for any determinate term, 'shall . . . be sentenced pursuant to' the [Determinate Sentencing Act], section 1170 et seq. (§ 1168, subd. (a) [determinate sentencing].) 'For any person not sentenced under such provision, but who is sentenced to be imprisoned in the state prison, including imprisonment not exceeding one year and one day, the court imposing the sentence shall not fix the term or duration of the period of imprisonment.' (§ 1168, subd. (b) [indeterminate sentencing].)" (*Id.* at pp. 654–655.)

"In any given case, an overall sentence might include both determinate terms and indeterminate terms. Whenever a person is convicted of two or more crimes, the court must impose either concurrent or consecutive sentences. (§ 669.)" (*Felix, supra,* 22 Cal.4th at p. 655.) That the court's authority to impose either concurrent or consecutive sentences includes life sentences is made clear by further language in section 669, which provides: "Life sentences, whether with or without the possibility of parole, may be imposed to run consecutively with one another, with any term imposed for applicable enhancements, or with any other term of imprisonment for a felony conviction."

Section 190 sets forth the punishment for persons convicted of murder. Except where the death penalty is imposed, a murderer receives an indeterminate term of life in prison. As applicable to petitioner here, the statute states second degree murder is "punished by imprisonment in the state prison for a term of 15 years to life." (§ 190, subd. (a).) The trial court sentenced petitioner to the prescribed 15-year-to-life indeterminate term for his murder conviction.

In addition to the prison terms imposed for underlying substantive offenses, there are numerous statutory provisions providing for additional punishment of a defendant through enhancements. (See, e.g., §§ 186.22, subd. (b)(1), 368, subd. (b)(2), 12021.5, 12022, 12022.5, 12022.53, 12022.55, 12022.6, 12022.7.) In some cases, as in this one, enhancements for a specified number of years, a determinate sentence, may be attached to an indeterminate life sentence. (§ 669; *Felix, supra,* 22 Cal.4th at pp. 655–656.) The determinate term enhancement attached to an indeterminate term is not subject to the determinate sentencing law. (*Felix, supra,* at p. 656.) The trial court here

added a one-year enhancement term for petitioner's use of a deadly weapon (§ 12022, subd. (b)(1)) and ordered the enhancement and the four-year determinate term imposed for petitioner's separate section 273.5 conviction to be served consecutively to the indeterminate life sentence. (See fn. 4, *ante.*)

When a life sentence and determinate terms are ordered to be served consecutively, section 669 directs that "the determinate term of imprisonment shall be served first and no part thereof shall be credited toward the person's eligibility for parole as calculated pursuant to Section 3046 or pursuant to any other section of law that establishes a minimum period of confinement under the life sentence before eligibility for parole."

Section 190 provides that "Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 [(the postsentence conduct credit provisions)] shall not apply to reduce any minimum term of a sentence imposed pursuant to this section. A person sentenced pursuant to this section shall not be released on parole prior to serving the minimum term of confinement prescribed by this section." (§ 190, subd. (e); hereafter section 190(e).)

## II.

### Section 2933.2

In this case, petitioner claims the CDCR is erroneously interpreting subdivisions (a) and (b) of section 2933.2 to bar his accrual of postsentence conduct credit on the determinate term he is serving first for his section 273.5 conviction. In order to determine petitioner's entitlement to such credit, we must interpret section 2933.2.

██ When we are called upon to interpret a statute, our primary task is to determine the Legislature's intent in order to effectuate the law's purpose. (*People v. Murphy* (2001) 25 Cal.4th 136, 142 [105 Cal.Rptr.2d 387, 19 P.3d 1129].) "In doing so we turn first to the statutory language, since the words the Legislature chose are the best indicators of its intent." (*Freedom Newspapers, Inc. v. Orange County Employees Retirement System* (1993) 6 Cal.4th 821, 826 [25 Cal.Rptr.2d 148, 863 P.2d 218]; accord, *People v. Mohammed* (2008) 162 Cal.App.4th 920, 927 [76 Cal.Rptr.3d 372]; *People v. Stewart* (2004) 117 Cal.App.4th 907, 909 [12 Cal.Rptr.3d 171].) We give the words of the statute their usual and ordinary meaning. (*People v. Cole* (2006) 38 Cal.4th 964, 975 [44 Cal.Rptr.3d 261, 135 P.3d 669].) "We do not, however, consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes. [Citation.] We

must harmonize the various parts of the enactments by considering them in the context of the statutory frame work as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history. [Citation.]" (*Ibid.*) An interpretation that renders words surplusage is to be avoided if possible. (*People v. Loeun* (1997) 17 Cal.4th 1, 9 [69 Cal.Rptr.2d 776, 947 P.2d 1313].)

 We also keep in mind that when statutory language is not clear, " '[i]t is our task to construe, not to amend, the statute.' [Citation.] In construing a statute, it is the role of the judiciary to simply ascertain and declare what is in terms or in substance contained in the statute, not to insert what has been omitted or omit what has been included. In other words, the courts 'may not, under the guise of construction, rewrite the law or give the words an effect different from the plain and direct import of the terms used.' [Citation.]" (*People v. Massicot* (2002) 97 Cal.App.4th 920, 925 [118 Cal.Rptr.2d 705]; accord, Code Civ. Proc., § 1858; see also *People v. Guzman* (2005) 35 Cal.4th 577, 587 [25 Cal.Rptr.3d 761, 107 P.3d 860].)

Section 2933.2 provides, in relevant part, as follows:

"(a) Notwithstanding Section 2933.1 or any other law, any person who is convicted of murder, as defined in Section 187, shall not accrue any credit, as specified in Section 2933 or Section 2933.05.

"(b) The limitation provided in subdivision (a) shall apply whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 or sentenced under some other law."

A. *Summary of the Parties' Positions*

Petitioner claims the meaning of section 2933.2(a) and (b) turns on the meaning of the clause in subdivision (a)—"any person who is convicted of murder." Petitioner notes that in *In re Reeves* (2005) 35 Cal.4th 765 [28 Cal.Rptr.3d 4, 110 P.3d 1218] (*Reeves*), the California Supreme Court has already interpreted the parallel language "any person who is convicted of [a violent felony]" in section 2933.1, subdivision (a), the statute that limits violent offenders' conduct credit accrual to 15 percent (hereafter section 2933.1(a)). The Supreme Court in *Reeves* found its effort to apply the seemingly plain language of section 2933.1(a) "reveal[ed] ambiguities the Legislature apparently did not foresee." (*Reeves*, at p. 770.) After extensive discussion of the difficulties with application of the language, petitioner notes the Supreme Court ultimately interpreted section 2933.1(a), the 15 percent

limit on credit, as having "no application to a prisoner who is not actually serving a sentence for a violent offense; such a prisoner may earn credit at a rate unaffected by the section." (*Reeves, supra,* at p. 780.) Petitioner contends *Reeves,* which involved concurrent sentences, and a subsequent case, *In re Tate* (2006) 135 Cal.App.4th 756 [37 Cal.Rptr.3d 710] (*Tate*), which applied *Reeves* to consecutive sentences, should be applied here to conclude that he is entitled to accrue postsentence conduct credit while, pursuant to the terms of section 669, he is first serving his four-year determinate sentence for his separate section 273.5 offense and not yet serving his murder sentence.

Petitioner avoids redundancy between section 190(e) and section 2933.2(a) and (b) by interpreting section 190(e) as applying only to the murder term itself, section 2933.2(a) as applying to separate determinate sentences that are included with the murder sentence based on conduct in the commission of the murder, and section 2933.2(b) as applying to enhancements attached to the murder conviction.

Respondent, however, contends section 2933.2(a) and (b) applies to all portions of petitioner's sentence. Respondent argues the language of section 2933.2(a) is clear and unambiguous. "[A]*ny* person who is convicted of murder . . . shall not accrue *any* credit . . . ." According to respondent, the only requirement for the prohibition to apply is that the person be convicted of murder. Respondent points out that the Legislature did not include any other qualifications in section 2933.2, in contrast with other work credit statutes where the Legislature has expressly included language specifying how the sentence credit is to be applied. (Compare § 2933.2(a) with § 2934 [prisoner exercising waiver under this section retains portion of conduct credits "attributable to the portion of the sentence served . . . prior to the effective date of the waiver"] and § 2933.6, subd. (a) [prisoner in specified placements not entitled to conduct credit "during the time" he or she is placed in those units].)

In support of its argument that section 2933.2 applies to petitioner's entire sentence, both the determinate and indeterminate terms, respondent also points out section 2933.2 contains two references to the determinate sentencing law. First, section 2933.2(a) states that credit "as specified in Section 2933" is not available to anyone who is convicted of murder. Section 2933 applies only to "persons convicted of a crime and sentenced to the state prison under Section 1170," i.e., the determinate sentencing law. (§ 2933, subd. (a).) Second, section 2933.2(b) states, "[t]he limitation provided in subdivision (a) shall apply whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 [(i.e., the determinate sentencing law)] or sentenced under some other law." Respondent argues these references reflect a legislative intent that section 2933.2 apply beyond a murderer's indeterminate life sentence.

Respondent contends that in order to avoid redundancy with section 190(e), section 2933.2 must be interpreted to cover not just determinate term enhancements attached to a murder sentence, but also other separate determinate terms, such as petitioner's section 273.5 sentence. For this point, respondent relies heavily on the reasoning of *People v. McNamee* (2002) 96 Cal.App.4th 66 [116 Cal.Rptr.2d 625] (*McNamee*), a case that held section 2933.2, subdivision (c), relating to presentence credit, applied to both the defendant's indeterminate term for second degree murder and his consecutive 10-year determinate term for use of a firearm in the commission of the murder. (*McNamee, supra*, at p. 74.)

Petitioner claims *McNamee, supra*, 96 Cal.App.4th 66, is not applicable to his case for several reasons: "(1) *McNamee* only concerned 'presentence conduct credits pursuant to Penal Code section 4019' (*id.* at p. 68), whereas [petitioner's] case only concerns post-conviction worktime credit; (2) *McNamee* prohibited credit against the determinate term that was 'included in a murder sentence based on conduct in the commission of the murder' (*id.* at p. 70), whereas [petitioner's] determinate term was imposed for a completely separate and distinct offense, occurring more than a year prior to the murder offense, for which he was separately sentenced; (3) the defendant in *McNamee* challenged the use of section 2933.2, subdivision (c), concerning only presentence credits, whereas the crucial language [a]ffecting [petitioner] derives from section 2933.2, subdivisions (a) and (b)."

Petitioner also claims respondent's interpretation of section 2933.2(a) as applying to any determinate term makes section 2933.2(b) unnecessary surplusage.

B. *Summary of Our Conclusions*

The language of section 2933.2(a) and (b), the prohibition of postsentence conduct credit, is broad and does not include any qualifications other than the phrase "any person who is convicted of murder." (§ 2933.2(a).) In interpreting the phrase "any person who is convicted of murder," the Supreme Court's analysis in *Reeves* of the similar phrase in section 2933.1(a) is applicable. The reasoning of *Reeves* and its application requires an interpretation of section 2933.2(a) and (b) that does not permit petitioner to accrue postsentence conduct credit against his consecutive determinate section 273.5 sentence. We also find *McNamee* instructive in interpreting section 2933.2 to avoid redundancy with section 190(e).

As we will explain, we conclude section 2933.2 extends beyond section 190(e), the credit prohibition applicable to the minimum term of a murderer's indeterminate life sentence. We read section 2933.2(a) to bar the accrual of

postsentence conduct credit under section 2933 and section 2933.05 on all determinate terms a murderer serves as a single period of custody either before or concurrent with the service of his or her indeterminate life term for murder. We read section 2933.2(b) as making it clear that enhancements attached to the murder are also barred from accruing postsentence credit.

## C. *Analysis*

To explain our conclusions, we find it necessary to start with a somewhat detailed summary of the Supreme Court's opinion in *Reeves, supra,* 35 Cal.4th 765, and a brief discussion of *Tate, supra,* 135 Cal.App.4th 756.

In *Reeves,* the Supreme Court considered how the 15 percent credit limitation of section 2933.1(a) for "any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 [(a violent offense)]" should apply when a defendant is convicted of both a violent offense and a nonviolent offense. (*Reeves, supra,* 35 Cal.4th at pp. 768–770.) Specifically, Reeves was sentenced to 10 years in state prison for a nonviolent offense with several enhancements. He was also sentenced to a concurrent five-year term for a violent offense triggering the 15 percent credit limitation of section 2933.1(a). (*Reeves, supra,* at pp. 768–769.) Reeves finished serving his sentence for the violent offense, but was still serving the remainder of his term for the nonviolent offense, when the question of credits arose. (*Ibid.*) The Supreme Court found its effort to apply the seemingly plain language of section 2933.1(a) to this situation "reveal[ed] ambiguities the Legislature apparently did not foresee" (*Reeves, supra,* at p. 770) and the legislative history was ambiguous as to the Legislature's intent (*id.* at pp. 776–777). The Supreme Court searched for a reasonable construction of section 2933.1(a) based on its language and the general purpose of the statute.

The Supreme Court rejected at the outset an interpretation that viewed the statutory phrase " 'any person who is convicted of a [violent] felony offense' " as referring to a "point of historical fact." (*Reeves, supra,* 35 Cal.4th at p. 771.) Noting "the Legislature typically uses different language when it intends to impose a continuing disability based on criminal history," the Supreme Court found section 2933.1(a) did not "disqualify, for all time, any person who has ever been convicted of a violent offense from earning more than 15 percent worktime credit." (*Reeves, supra,* at pp. 771–772.) The Supreme Court emphasized the statute's use of the present tense verb—" 'any person who *is* convicted of a [violent] . . . offense.' " (*Id.* at p. 773, italics added.)

The Supreme Court then concluded that "an offender serving a sentence that combines *consecutive* terms for violent and nonviolent offenses is subject to

the credit restriction imposed by section 2933.1(a) for the entire sentence." (*Reeves, supra,* 35 Cal.4th at p. 772.) The court reasoned: "Under the Determinate Sentencing Act (§ 1170 et seq.), multiple consecutive determinate terms must be combined into a single, 'aggregate term of imprisonment for all [such] convictions' (§ 1170.1, subd. (a)) that merges all terms to be served consecutively and complies with the rules for calculating aggregate terms (e.g., one-third the base term for subordinate terms and specific enhancements applicable to subordinate terms (*ibid.*)), whether or not the consecutive terms arose from the same or different proceedings (*ibid.*; see also § 669; Cal. Rules of Court, rule 4.452). To suggest that a prisoner serving an aggregate term serves the component terms and enhancements in any particular sequence would be a meaningless abstraction. For this reason, when an aggregate term includes time for a violent offense, at any point during that term the prisoner literally 'is convicted of a [violent] felony offense' (§ 2933.1(a)) and actually is serving time for that offense. Accordingly, a restriction on credits applicable to 'any person who is convicted of a [violent] felony offense' (*ibid.*) logically applies throughout the aggregate term." (*Reeves, supra,* at pp. 772–773.)

However, the court found the same logic was inapplicable to concurrent terms received for a mix of violent and nonviolent offenses because such terms do not merge into "a single, unified term of confinement for purposes of worktime credit." (*Reeves, supra,* 35 Cal.4th at p. 773.)[7]

Concurrent terms presented particularly difficult questions regarding the application of the credit restriction of section 2933.1.

On the one hand, when an inmate finishes serving his or her violent offense sentence before completion of the concurrent term for his or her nonviolent offense (as in Reeves's case), it is not accurate to say he or she "is" a person convicted of a violent felony after the violent felony sentence was completed. He or she becomes a person who "was" convicted of a violent felony and

---

[7] The Supreme Court rejected the People's attempt to construe overlapping concurrent terms as a single period of confinement for purposes of section 2933.1(a) based on the language and case law interpreting subdivision (c) of section 2933.1, which addresses presentence conduct credit under section 4019. (*Reeves, supra,* 35 Cal.4th at pp. 774–776.) The Supreme Court found the case law that holds section 2933.1, subdivision (c) applied to the offender, not the offense (*Reeves,* at p. 774, citing *People v. Ramos* (1996) 50 Cal.App.4th 810, 815–817 [58 Cal.Rptr.2d 24], and cases following *Ramos*), makes sense in the context of presentence credit where the confinement is indivisibly attributable to all the offenses with which the inmate is charged and ultimately convicted. (*Reeves, supra,* at p. 775.) But the case law did not answer the different issue of how to interpret section 2933.1(a) for the situation before the court. (*Reeves, supra,* at p. 775.) The Supreme Court concluded the reference in section 2933.1, subdivision (c) to subdivision (a) of the same section simply " 'clarif[ied] the intended target population' of subdivision (c)." (*Reeves, supra,* at pp. 775–776.) Section 2933.1, subdivision (c) did not qualify subdivision (a) of section 2933.1. (*Reeves, supra,* at p. 776.)

except for the time remaining on the separate, concurrent nonviolent offense, would be entitled to release from custody. (*Reeves, supra,* 35 Cal.4th at pp. 776–777.) The Supreme Court concluded it was neither fair nor reasonable under the present verb tense of the statutory language to subject Reeves to the credit limitation of section 2933.1(a) during his remaining time in custody. (*Reeves, supra,* at p. 777.)

On the other hand, allowing Reeves to accrue credit during his overlapping service of both offenses at two different rates, one applicable to his nonviolent offense and one applicable to his violent offense, would result in Reeves's release after five years in prison—"exactly the same time he would have served had he never been convicted of and sentenced for the violent offense." (*Reeves, supra,* 35 Cal.4th at p. 778.) This frustrated the Legislature's purpose of delaying the release of violent offenders. (*Ibid.*)

The Supreme Court sought a construction of section 2933.1(a) that did not create tension with the statutory language or frustrate the legislative purpose. (*Reeves, supra,* 35 Cal.4th at pp. 777–779.) Ultimately, it interpreted section 2933.1(a) as follows: "Section 2933.1(a) limits to 15 percent the rate at which a prisoner convicted of and serving time for a violent offense may earn worktime credit, regardless of any other offenses for which such a prisoner is simultaneously serving a sentence." (*Reeves, supra,* at p. 780.) In a footnote, the court explained that this rule would apply "[u]nless, of course, one of those other offenses more severely restricts the prisoner's ability to earn worktime credit. (E.g., § 2933.2, subd. (a) [eliminating worktime credit altogether for persons convicted of murder])." (*Id.* at p. 780, fn. 17.) "On the other hand, section 2933.1(a) has no application to a prisoner who is not actually serving a sentence for a violent offense; such a prisoner may earn credit at a rate unaffected by the section." (*Id.* at p. 780, fn. omitted.)

In *Tate, supra,* 135 Cal.App.4th 756, the reviewing court applied the reasoning of *Reeves* to a situation of consecutive sentencing that statutorily could not be considered a single aggregate term. Specifically, in *Tate* the petitioner was convicted of, and sentenced to state prison for, a violent offense triggering the application of the 15 percent credit limitation of section 2933.1(a). (*Tate, supra,* at p. 758.) The petitioner was subsequently convicted of possessing a weapon in prison and sentenced to two years to be served consecutively. (*Id.* at p. 759.) Section 1170.1, subdivision (c) provides, in relevant part, that a consecutive sentence for an in-prison offense "shall commence from the time the person would otherwise have been released from prison." The reviewing court in *Tate* held the restriction of section 2933.1(a) did not apply to the petitioner's consecutive term for a nonviolent in-prison offense. (*Tate, supra,* at pp. 761–766.) Specifically, the court noted the consecutive sentence for the in-prison nonviolent offense was not merged

or aggregated with the petitioner's original term by operation of section 1170.1, subdivision (c). Thus, once the petitioner completed his sentence for the violent offense, he was no longer subject to imprisonment for such offense—he was "no longer a 'person who is convicted of a [violent] felony offense' (§ 2933.1(a))." (*Tate, supra*, at p. 765.) Accordingly, the petitioner was eligible for worktime credit on his consecutive sentence. (*Id.* at pp. 765–766.)

Having reviewed these cases, we turn to the language of section 2933.2(a) at issue before us.

■ To begin with, we agree with respondent that the plain language of the statute is very broad. Section 2933.2(a) prohibits "any person who is convicted of murder" from accruing "any" credit under section 2933 or 2933.05.

Further, section 2933.2 contains two references to the determinate sentencing law. Section 2933.2 references credit accrued "as specified in Section 2933 or Section 2933.05." (§ 2933.2(a).) An inmate may earn credit under section 2933, and additional credit under section 2933.05, only when he or she has been sentenced pursuant to the determinate sentencing law. (§§ 2933, subd. (a), 2933.05, subd. (a).) Section 2933.2(b) provides that the credit prohibition stated in subdivision (a) applies whether the defendant is sentenced under the determinate sentencing law or some other law. Thus, the language of section 2933.2(a) and (b) on its face appears directed, without limitation, to the determinate terms a murderer may also receive. And, as respondent points out, there is no language in section 2933.2(a) limiting its application to determinate sentence enhancements or determinate sentences for offenses committed in connection with the murder. Any person who is a murderer cannot earn "any" credit. (§ 2933.2(a).) In construing section 2933.2, we are not at liberty to insert omitted terms. (*People v. Massicot, supra*, 97 Cal.App.4th at p. 925.)

■ When a murderer receives both a determinate sentence and an indeterminate life sentence, the language of section 2933.2(a) imposes a complete ban on the accrual of section 2933 and section 2933.05 credit provided the prisoner is a person "who *is* convicted of murder." (Italics added.) In construing this phrase, we believe it is appropriate to apply the Supreme Court's reasoning in *Reeves* to our construction of section 2933.2 because both sections 2933.1 and 2933.2 are limitations on a prisoner's accrual of postsentence conduct credit. ■ Ordinarily, "[w]ords or phrases common to two statutes dealing with the same subject matter must be construed in pari materia to have the same meaning." (*Housing Authority v. Van de Kamp* (1990) 223 Cal.App.3d 109, 116 [272 Cal.Rptr. 584]; accord, *In re Do Kyung K.* (2001) 88 Cal.App.4th 583, 589 [106 Cal.Rptr.2d 31].)

In *Reeves, supra*, 35 Cal.4th 765, the Supreme Court concluded a prisoner serving consecutive determinate sentences, an aggregate sentence, for violent and nonviolent offenses was at all points during such time a person who "is" a violent offender. (*Id.* at pp. 772–773.) The Supreme Court also concluded that although a prisoner serving concurrent determinate terms was not serving an aggregate sentence, it could still be said such person "is" a violent offender up until such point as he or she would be entitled to release from prison for the violent offense conviction. (*Id.* at pp. 773, 777–779.) Thus, the court stated its holding: "Section 2933.1(a) limits to 15 percent the rate at which a prisoner convicted of and serving time for a violent offense may earn worktime credit, regardless of any other offenses for which such a prisoner is simultaneously serving a sentence. On the other hand, section 2933.1(a) has no application to a prisoner who is not actually serving a sentence for a violent offense; such a prisoner may earn credit at a rate unaffected by the section." (*Id.* at p. 780, fns. omitted.)

We understand the holding of *Reeves* to be grounded on the Supreme Court's analysis of when it could be fairly said a prisoner serving determinate terms "is" a violent offender as required for application of the credit limit of section 2933.1(a). When the prisoner is serving terms together (i.e., concurrent terms) that are not a single aggregate term, but it can still be said he or she "is" a violent offender, the legislative intent to delay a violent offender's release controls and section 2933.1(a) applies.[8] However, at the point in time when the CDCR has no basis to continue holding the prisoner for the violent offense, the prisoner becomes a person who "was" convicted of a violent offense and is no longer subject to section 2933.1(a).

*Tate, supra*, 135 Cal.App.4th 756, is consistent with this view. In *Tate*, the prisoner would have been released for his violent offense but for the commission of the nonviolent in-prison offense, for which he was statutorily required to serve a consecutive sentence beginning after the completion of his other term. (*Id.* at p. 765.) At that point in time, he became a person who "was" convicted a violent felony. (*Ibid.*) Section 2933.1(a) no longer applied.

In this case, we are dealing with a mix of determinate, enhancement determinate, and indeterminate terms imposed consecutively on a murderer. Section 669 prescribes that the determinate terms be served first. Nevertheless, the relevant question remains—at what point in time can it fairly be said that petitioner "is" a person convicted of murder? Petitioner "is" a person

---

[8] We understand footnote 17 of *Reeves, supra*, 35 Cal.4th at page 780, as a statement by the Supreme Court that where a murderer is serving *concurrent* terms for murder and a violent offense, the credit prohibition of section 2933.2 applies instead of the credit limitation of section 2933.1(a). Footnote 17 does not answer the question before us regarding consecutive sentences.

convicted of murder at all points in service of such a single period of custody. Even though he has not yet started serving the indeterminate life sentence for the murder, he is being held by the CDCR for such conviction. Petitioner would not be entitled to release when he finishes serving his determinate terms. He still must serve his 15-year-to-life sentence for second degree murder. He "is" a person convicted of murder subject to the broad credit prohibition of section 2933.2 for murderers.

Although the issue before it was presentence rather than postsentence credit under section 2933.2, the opinion of the Fourth District Court of Appeal, Division Two, in *McNamee, supra*, 96 Cal.App.4th 66, supports our conclusion. In *McNamee*, the defendant was convicted of second degree murder and sentenced to an indeterminate term of 15 years to life, plus a consecutive 10-year term for use of a firearm in the commission of the murder. (*Id.* at p. 68.) The defendant's sole contention on appeal was that the trial court improperly failed to award him presentence conduct credits pursuant to section 4019 on the ground that his murder conviction made him ineligible for credits under section 2933.2, subdivision (c).[9] (*McNamee, supra*, at p. 68.) The defendant argued he was entitled to credits on the 10-year determinate term part of his sentence. (*Ibid.*) The Court of Appeal disagreed. It concluded the language of section 2933.2, subdivision (c), "is broad and evidences an intention to impose a complete ban on presentence conduct credits for those defendants who come within its purview." (96 Cal.App.4th at p. 70.) It noted the language of section 2933.2, subdivision (c), contains no qualification limiting the credit ban to the indeterminate murder sentence. (*McNamee, supra*, at p. 70.) It noted the Legislative Counsel's Digest to the bill that added section 2933.2 described its effect as precluding the accrual of " '*any* sentence credit' " by a person who is convicted of murder. (*McNamee, supra*, at p. 71.)

The *McNamee* court found further support for its interpretation of the presentence credit prohibition in subdivision (c) of section 2933.2 in subdivisions (a) and (b) of section 2933.2 regarding postsentence credit. (*McNamee, supra*, 96 Cal.App.4th at pp. 71–72.) Noting the references in those subdivisions to the determinate sentencing law, the court in *McNamee* stated, "the import of section 2933.2[(a)] and (b) is that a defendant convicted of murder cannot accrue postsentence worktime credits even if his or her sentence includes a determinate term, *such as would be imposed for a separate offense* or an enhancement, in addition to the indeterminate term for the murder." (*Id.* at p. 71, italics added.) The court reasoned: "If it were

---

[9] Section 2933.2, subdivision (c) provides: "Notwithstanding Section 4019 or any other provision of law, no credit pursuant to Section 4019 may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest for any person specified in subdivision (a)."

otherwise, section 2933.2, subdivisions (a) and (b) would be duplicative of section 190, subdivision (e)." (*Ibid.*) Since "[s]tatutes must be harmonized, both internally and with each other, to the extent possible, and interpretations that render words surplusage are to be avoided," the *McNamee* court had to "presume the Legislature intended section 2933.2, subdivisions (a) and (b) to prohibit postsentence credits not only against a murderer's indeterminate term, but also against any determinate term included in his or her sentence." (*Id.* at p. 72.) It rejected the defendant's argument that section 2933.2(b) could be read as simply making it clear that no credits accrued against the indeterminate part of the sentence even if a determinate term was also imposed. The court noted section 2933.2(a) "is framed in absolute terms," stating without qualification that a murderer " 'shall not accrue *any credit*, as specified in Section 2933.' " (*McNamee, supra,* at p. 72.) We agree with *McNamee.*

■ To avoid redundancy with section 190(e), we conclude section 2933.2(a) and (b) must be interpreted to extend beyond the indeterminate life term imposed for the murder itself. This is particularly true as section 2933.2 and section 190(e) were adopted together. Section 2933.2 was originally enacted by the Legislature in 1996 along with the credit-barring provisions of section 190(e). (Stats. 1996, ch. 598, p. 3280, operative upon approval by electorate.) When the legislation was not submitted to the voters for approval in 1996, section 2933.2 and the amendments to section 190 were incorporated in legislation adopted in 1997 and the provisions were approved by the electorate as part of Proposition 222 in 1998. (Stats. 1997, ch. 413, § 3(a), p. 2758, operative upon approval by electorate; Stats. 1997, ch. 413, § 1, p. 2756, approved June 2, 1998, Primary Elec., operative June 3, 1998; see *People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1315 [109 Cal.Rptr.2d 643].) We presume the Legislature and the voters did not intend to enact completely duplicative statutes. Rather, we conclude section 2933.2 was intended to extend section 190(e)'s credit prohibition for a murderer to all other portions of his or her sentence. Such a construction explains the references in section 2933.2(a) and (b) to the determinate sentencing law, as well as to other sentencing law. Such construction gives effect to the plain, broad language of section 2933.2(a) and fits with the Supreme Court's interpretation of similar language in section 2933.1(a).

■ We conclude section 190(e) bars a murderer from earning any postsentence conduct credit to reduce the minimum term of the life sentence he or she received for the murder. Section 2933.2(a) bars the accrual of postsentence conduct credit under section 2933 and section 2933.05 on all determinate terms a murderer serves as a single period of custody either before or concurrent with the service of his or her indeterminate life term for murder. Section 2933.2(b) makes it clear that enhancements attached to the murder are also included in the statute's postsentence credit prohibition.

The CDCR did not err in determining petitioner was ineligible under section 2933.2 to earn postsentence conduct credit on all portions of his sentence.

## DISPOSITION

The order to show cause in this proceeding is discharged, and the petition for writ of habeas corpus is denied.

Raye, Acting P. J., and Butz, J., concurred.

Petitioner's petition for review by the Supreme Court was denied August 18, 2010, S184856.